S97Y2006. IN THE MATTER OF RONALD J. FREEMAN.
(506 SE2d 872)

PER CURIAM.

This disciplinary proceeding has been filed here after the special master found that the respondent, Ronald J. Freeman, had violated Standards 4, 65 (A), and 65 (D) of State Bar Rule 4-102, and recommended that Freeman be suspended from the practice of law for a period not to exceed six months. For the reasons that follow, we conclude that Freeman should be suspended from the practice of law for 90 days.

The State Bar and Freeman have stipulated to the facts that led the special master to conclude that Freeman had violated the foregoing standards. These facts demonstrate that Freeman, while acting as the guardian of the estate for an incapacitated adult, wrote two estate checks to cash totaling $935.13, loaned the funds to his brother who was suffering financial problems, and entered the checks in the check register as having been written to two different businesses. The undisputed facts also show that Freeman wrote checks for $1,000 and $3,800.91 on an account for a second estate for the benefit of that estate, but that he failed to record the withdrawals

in the estate check register. Several months after writing the checks on the first account, Freeman's law partner questioned him about the check entries, prompting Freeman to confess his misconduct first to his partner and then to the probate court. Freeman also repaid the funds in question. Freeman subsequently reported his misconduct to the State Bar, and has fully cooperated in the disciplinary proceedings.

The State Bar presented no evidence in aggravation, but Freeman presented voluminous evidence in mitigation. About the time of his misconduct, Freeman began treatment with a psychiatrist. At the hearing before the special master, the psychiatrist testified that she diagnosed Freeman as suffering from major depression, precipitated by significant personal and family stress and not by any substance abuse. She added that the clinical depression impaired his judgment; that Freeman's misconduct "unequivocally" was out of character for him; and that his misconduct was the result of his depression. Freeman's psychiatrist began prescribing medication for him in March 1994, and at the May 1997 hearing before the special master, she testified that Freeman had "turned the corner" and that she "would be extremely surprised to see anything like this ever occur again." The clinical psychologist that Freeman has been seeing since 1994 gave essentially the same testimony as Freeman's psychiatrist.

In addition, numerous witnesses testified that from about the beginning of 1992 through 1994, Freeman was not himself and appeared depressed. Other witnesses, including nine judges, testified that Freeman is a person of good moral character, and that his misconduct was completely out of character. Finally, evidence was introduced that Freeman has contributed significantly to his community and to his profession for many years.

In determining the appropriate level of discipline to impose, this Court looks to the ABA Standards for guidance, and considers, among other things, the duty violated, the lawyer's mental state, the injury caused by the lawyer's misconduct, and the extent of aggravating and mitigating factors.[1] Although Freeman committed serious ethical violations, there is no evidence that, once the estate funds were repaid, his misconduct caused any injury to the estates. Moreover, there is significant mitigating evidence, uncontradicted by the State Bar. The relevant mitigating factors are that Freeman has had no prior disciplinary record;[2] he acted without a selfish motive (he gave the money to his brother who was suffering financial prob-

---

[1] *In re Lyles*, 266 Ga. 668, 670 (469 SE2d 670) (1996); *In re Morse*, 266 Ga. 652, 653 (470 SE2d 232) (1996).

[2] ABA Standards for Imposing Lawyer Sanctions, Standard 9.32 (a).

lems);[3] he was suffering personal and emotional problems stemming from his relationship with his family;[4] he made restitution and rectified the consequences of his misconduct shortly after the misconduct occurred;[5] he made "full and free disclosure" to the disciplinary authorities;[6] he offered uncontradicted evidence of his good character from numerous members of the bench and bar, from his church, and from the community at large;[7] he offered compelling evidence, uncontradicted by the State Bar, that he was suffering from clinical depression at the time of the disciplinary infraction, and that, but for that depression, he would not have committed the misconduct in question;[8] he offered testimony from his psychiatrist and his psychologist that he had worked hard at rehabilitating himself, and that he was in fact rehabilitated and highly unlikely to repeat such conduct;[9] and he offered evidence from himself and others that he was extremely remorseful about his misconduct.[10]

The factors discussed above, and in particular the significant mitigating evidence, militate toward the conclusion that a 90-day suspension is appropriate in this case. Moreover, although this Court previously has suspended an attorney for two years for converting $500 of his client's money to his personal use, the attorney in that case failed to cooperate with disciplinary authorities, failed to make restitution, and failed to offer mitigating evidence,[11] factors which distinguish that case from the present one. For these reasons, we order that Freeman be suspended from the practice of law for 90 days.

In addition to the ninety-day suspension, we order that for a minimum of one year from the date of this opinion, Freeman must continue his psychotherapy, and must obtain a report from his psychiatrist or psychologist regarding his condition on a quarterly basis and file that report with the Committee on Lawyer Impairment.[12] At the end of one year, if Freeman's psychiatrist or psychologist certifies to the committee that treatment is no longer necessary, and the Committee concurs in that report, the treatment may cease. If, on the other hand, Freeman's psychiatrist or psychologist certify to the committee that treatment continues to be necessary, or if the Committee

[3] Standard 9.32 (b).
[4] Standard 9.32 (c).
[5] Standard 9.32 (d); *In re Housman*, 268 Ga. 16, 18 (485 SE2d 202) (1997).
[6] Standard 9.32 (e); *In re Housman*, 268 Ga. at 18.
[7] Standard 9.32 (g); *In re Housman*, 268 Ga. at 18.
[8] Standard 9.32 (h).
[9] Standard 9.32 (j).
[10] Standard 9.32 (l).
[11] *In re Meier*, 256 Ga. 72, 73-75 (344 SE2d 212) (1986).
[12] See *In re McAllister*, 263 Ga. 346 (435 SE2d 37) (1993).

continues to require it, treatment, as well as the filing of quarterly reports with the Committee, must continue until the psychiatrist or psychologist certifies that treatment is no longer necessary and the Committee approves that certification.

*Ninety-day suspension. All the Justices concur, except Hunstein and Thompson, JJ., who dissent; Carley, J., not participating.*

HUNSTEIN, Justice, dissenting.

I cannot agree with the conclusion reached by the majority that the appropriate level of discipline in this case is suspension for 90 days. I believe Freeman's conduct mandates the sanction of disbarment.

ABA Standard 5.11,[13] which we have relied upon in this Court as persuasive authority, provides that absent mitigating or aggravating factors, disbarment is generally appropriate for serious, intentional conduct involving criminal conduct or dishonesty. The special master found that Freeman engaged in professional conduct involving dishonesty. Standard 4, Bar Rule 4-102. Conversely, there were no persuasive mitigating circumstances surrounding Freeman's misconduct. This Court has consistently held that

> [i]n determining the appropriate sanction, the American Bar Association's standards provide guidance. *In the Matter of Jack O. Morse*, 265 Ga. 353, 354 (2) (456 SE2d 52) (1995). Under those standards, disbarment is generally appropriate when a lawyer engages in any serious criminal misconduct . . . or engages in any other intentional conduct involving dishonesty, fraud, or deceit. Standard 5.11, ABA Standards for Imposing Lawyer Sanctions (1991).

*In the Matter of Thomas Washburn*, 266 Ga. 50 (464 SE2d 192) (1995). Freeman took funds held in a guardianship account which belonged to an incapacitated adult he was representing. He was found to have violated Standards 4, 65 (A) and 65 (D) of Bar Rule 4-102, each of which may be punished by disbarment. In failing to apply disbarment as the appropriate level of discipline, the majority sends the wrong message to the bench, bar, and public, by again failing to punish the disciplinary infraction with a penalty appropriate to the seriousness of the misconduct. See *In the Matter of Kenneth Raymond Carlson*, 268 Ga. 335 (489 SE2d 834) (1997). Because I

---

[13] Standard 5.11 provides that disbarment is generally appropriate when: (a) a lawyer engages in serious criminal conduct, a necessary element of which includes . . . misappropriation or theft; or (b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

would disbar Ronald J. Freeman, I must dissent to the majority's imposition of a 90-day suspension in this case.

I am authorized to state that Justice Thompson joins in this dissent.

DECIDED OCTOBER 13, 1998.

*William P. Smith III, General Counsel State Bar, Steven J. Kaczkowski, Assistant General Counsel State Bar,* for State Bar of Georgia.

*Rogers & Hardin, Robert S. Remar,* for Freeman.